Next up is U.S. v. Bartley, 21-2898. Good morning, Your Honors. May it please the Court, I'm Megan Bennett. I represent Defendant Appellant Daryl Bartley. Mr. Bartley challenges the imposition of the conditions of supervised release in this case on three grounds. First, he argues that the oral pronouncement as a general matter was inadequate as to all of the non-mandatory conditions of release. Second, he argues that the imposition of the search condition was not adequately supported by the record in this case. And last, he argues that the employment condition in the written judgment expressly conflicts with the employment condition as imposed during the sentencing hearing. Is that third one still alive, or is that now moved? Well, it could still be alive, Judge Lynch. The employment condition under the oral pronouncement was triggered after his home detention was terminated. His home detention is terminated, so he still does have the employment condition. I guess if he were to be violated and resentenced, of course, then there would have to be an imposition of new conditions of release. I'm sorry, but I thought the problem was that the oral pronouncement, that there was a condition that he remain employed, ran against the statement, also orally pronounced, that he could not remain employed during the time of the home confinement. So the written judgment, what was called Standard Condition 7, imposed a requirement of 30 hours a week of full-time employment. The oral pronouncement at sentencing, the sentencing court imposed the 18 months of home detention for the first 18 months of supervised release. And in a colloquy with Mr. Bartley, expressly told him he was not permitted to work during that 18 month period. But then that means you still have a live argument against the employment condition because of the non-pronouncement of that. Correct. But with respect to the conflict, there is no longer a conflict. Because the conflict would be if, I don't know what to do. I'm told I'm supposed to remain employed without any time limitation. And I'm also supposed to stay home and not work. And so that is a conflict. But there's no longer a conflict because the first part is terminated. And by the way, nobody ever tried to violate him for not working. What I would say, though, is that if he were to be violated now, his probation officer could include as a specification the failure to maintain full-time employment during the entire period of his supervised release. It may be improbable, but it's not impossible. I see. So it's not that you're saying the remedy for the conflict as opposed to the failure to pronounce. The remedy for the conflict may have been to strike the written employment condition altogether so that he wouldn't be bound for it even now. You're not making that argument. Well, the remedy, if the court were to find error here, a conflict, or a failure to orally pronounce, the remedy would be to remand to the district court for imposition of conditions of release orally pronouncing the employment condition or, I guess, to strike. Sorry, Judge Robinson, your question was whether the remedy. It's not important. Go ahead and get to what you want to talk about. I don't know if the court wants to address the waiver issue at all. Isn't that the most important issue from the government side? In other words, assume that the conditions all should have been orally pronounced. Assume even that there wasn't an adequate explanation of why some of these things were adopted. I'll do what Judge Radley sometimes does and say, I'm going to tell you a state of proposition and you tell me why it's wrong. My proposition would be that Judge Fairlaher did exactly what should have been done, which is she said to the defendant, look, there is this long list of things that are in the pre-sentence report. You read that? Yes. You talked about it with your lawyer? Yes. Do you folks, you, the person, the defendant, you, the lawyer, have any objection to those? No. Then she went further and talked about various other things to make sure they were understood and so on. But it seems to me that that is preferable to a pronouncement that leads to everyone sitting there, just as you might say in the fine print, you read this, your eyes glaze over. Well, in the fine print, your ears glaze over when somebody is reading you 15 different conditions. It's like all the disclosures that the drug companies make in their advertisements. You stop except when it says could include death. You're not really paying a lot of attention to all these things that could happen. Right. So what she did was she made sure that the defendant and counsel knew about everything. That's the main purpose of pronouncement and had an opportunity to object. And they said, no problem. So why doesn't that solve everything and actually do a better job of it than if there was literal compliance with the idea of reading the mail out loud? So I think the answer to that bleeds over from waiver into the adequacy of the oral pronouncement, but I'll address both. No, I wouldn't say it's, no, I'd say it's the waiver that the defendant gets to be made aware of things and says, I don't have a problem with that. But I will address the waiver, but I think why it's inadequate bleeds over into the oral pronouncement requirement. So I would say in this case that the conduct, the defense conduct here doesn't rise to the level that is required by this court for finding a true waiver. It was not the sort of intentional, aggressive, tactical decision making that this court has relied on in other cases. It has to be knowing and voluntary. It has to be knowing and voluntary, an intelligent and voluntary waiver of a known right. And that I think is where we bleed into the oral pronouncement issue. So what the court did was just incorporate the non-mandatory conditions by reference to the pre-sentence investigation report and as to the five that are called the special conditions, did mention the five special conditions. But there was no finding, there was no statement on the record as to the justification for the imposition of the non-mandatory. What would there need to be? A lot of these, there could be reasons why they wouldn't be reasonable in a particular case. They are likely to be reasonable in the average case. And the question is, you've seen them, do you have a problem with them? If the defendant doesn't have a problem with them, why do we need to give a long explanation of why it's okay? Well, I think this case is a good example. So there is, I don't think there is a factual basis to support the search condition here. But you expressly consented to that condition. Well, no, Your Honor. There was express consent toward the end about special conditions. Isn't that one of the special conditions? But this was particularly in the context, and having been sentencing counsel at the sentencing hearing, maybe it seems outside the record, but this was particularly in the context of the restriction on access to new lines of credit and giving the probation officer access to Mr. Bartley's financial data, which did, when I say on the record, I might object in other cases, but not here. That is specifically, the reference is specifically to the special conditions, the non-mandatory conditions requiring that Mr. Bartley provide probation access to his financial information and not open new lines of credit or new bank accounts. The problem is that I understand your explanation. I don't think that's what happened in court. The judge asks, there are several suggested special conditions and starts to list them. The search condition, drug testing and treatment, the financial conditions, the new lines of credit, and the recommendation to be supervised as district residents. Do you object to any of those? And you say, thanks for asking. In some cases, I might. And you don't say, I understand the request for the financial conditions. You say, I understand the request for those special conditions, and the defense would not have an objection to those. I guess your argument is that was inartful or imprecise. It is, in fact, a waiver. It is, in fact, a statement of consent and lack of objection as to all of those conditions. I would say that it doesn't rise to the level of true waiver that this court has held justifies the loss of an appellate argument. So it's forfeiture? It's forfeiture, and then you would review it for plain error review. Well, isn't there a clear tactical reason for the defense to go along with just about anything by way of conditions of confinement? Because what the defense is pitching is, don't put me in jail, notwithstanding my horrible criminal record, which the district court says is the worst she's ever seen. That might be a little bit of an exaggeration. I know she's seen a lot. But this is a deliberate effort to pitch the idea of a limited or no jail time, and yet don't have to worry because we can work it out in supervised release. You don't have to think this guy's going to be a danger to the community. A, he's sick, and B, we can fix all that with conditions of release. With the statutorily mandatory conditions of release. He's not going to be able to commit a new crime. Was that ever said? Indeed, when we got to onerous special conditions that aren't even the standard conditions that we can have a discussion about also, even with respect to specially onerous conditions, the statement is, in other cases I might say that's not really justified, but not here. Now either that means not here because, yeah, in this case I agree there's a good reason for it, but maybe it's more, not here because I'm not going to fight you on those things because our goal is to not have this guy in prison. I understand that interpretation, but I would say that it's just not as convincingly evident on the record as have been the statements that have justified a finding of true waiver. I'll give an example. I understand there may be even stronger ones where the defendant says, literally says, don't send me to jail. You can put this condition on and that will fix. But do you have any case that says on a record like this that there was no waiver? There's the Eberstadt case from this court in which the panel said, just like this, it was a Fifth Amendment due process argument that the panel decided to reach even though it said that it could find waiver. So I guess what I would say is that there is some case law suggesting that waiver could be interpreted as a confidential doctrine. But if we agree, and I think you're suggesting that we do, that this is something of an open question. It's not controlled by previous waiver cases. But there's nothing that forbids interpreting this as a waiver. I'm wondering why we should think it's a good rule not to take the approach that Judge Fala took here. I think that this court heard argument in Marana, and I believe Judge Mara was on the panel in November. We've got that, and we've also got a bunch of cases. The pipeline is full, but I know from the oral argument in Marana that the federal defender there suggested that Judge Fala's procedure in this district was sort of the benchmark. I didn't know that. From reading this record, I thought it was the benchmark. This is what I would have done. Here's what I would say. With the Fourth Circuit, and now we're getting toward the merits, but obviously the Second Circuit is an outlier now amongst all the circuits in terms of what has to be orally pronounced and not requiring non-mandatory conditions be orally pronounced. I hear that, but what I'm focused on is what constitutes a waiver, and is it a good thing to have the opportunity to waive so as not to have ritualistic stuff that nobody cares about? What I would say is I think that the two questions are inextricably intertwined insofar as the waiver has to be knowing, and that without the recitation of the conditions that are being imposed and the balancing in open court between the reasonableness of the restrictions and the deprivation of liberty that they impose. The other thing that Judge Fala did here, which is interesting, is that as to some of the conditions that were perhaps more onerous or more unusual or maybe there was some issue, she did talk about them in lay language, and it seems to me that here you get to another sort of problem with requiring rituals, that here she's damned if she does and damned if she doesn't. If she just does what a lot of judges, the worst ones, do at Rule 11 proceedings and just sort of trot through at rapid lightning speed the things that they have to say on the record, that that's where you're safe if you do that. But if you make any effort to make sure the person actually understands it by making sure that I'm going to tell you roughly what this means and what is the problem with this perhaps, and make sure you understand it and you're agreeing to it. But by the way, you did read the actual technical language of it and understood that, right? I just am, the mind boggles at a ruling that would say we're going to discourage judges from doing that sort of thing. We're going to say the gold standard is not Judge Phelan. The gold standard is rattling through 15 boring things that nobody cares about. But I think that's where the two issues are intertwined in that Judge Phelan's adoption of the conditions as set forth in the PSR would be adequate under Trussello. And she did nothing wrong. And in fact, she did more than many courts within this circuit might have done. But if this court is inclined to revisit it's now a standalone precedent in Trussello, I don't know... I'd love to revisit Trussello and say there needs to be some kind of oral pronouncement. But I would raise hell if revisiting Trussello means that waiver is going to be read so strictly that the only way for a judge to survive in that regime with conditions of confinement is to sound like a drug ad on television. Is the solution here in terms of knowing to do what we do, so at least what I did when I was doing a waiver of indictment, for example, I'd say you have a waiver of the right to read the indictment. I'd say you have a right to have me read this out loud to you. You've indicated that you have a hard copy. You've discussed it with counsel and you're able to read English. In light of that, would you like to waive the reading of the indictment? But I started by telling them you have the right to the reading. Is that what the problem is? Should Judge Phelan have said sir, you have the right to have me read into the record verbatim all of the conditions that I'm going to pronounce. I'm not saying that's the law, but that's what you are preferring. Do you want to do that? Is that the problem? I think that that addresses part of the problem in these cases in which even under Judge Phelan's procedure is significantly more detailed than some of the other judges within the circuit. But where is the gap? That would solve the knowing gap. I'm trying to figure out because we do this all of the time where we say, do you want to waive this? Do you accept waivers? I think one thing, for example, here would be to say, and not to go through some mind-numbing recitation like a pharmaceutical ad, but to say there are on page X of the investigation report, there are 16 non-mandatory conditions. Have you had an opportunity to look at them? Do you want me to read them to you in open court? And have the defendant actually acknowledge. I think one of the issues... Why does the page number and the paragraph matter? What do we think defense lawyers are doing? Isn't it incumbent on defense lawyers to have some discussion with their client about what this stuff is about? And when the judge says, have you read it? Have you discussed it with your lawyer? Not just have you read the pre-sentence report. There are these conditions that are laid out there. Have you read them? But you didn't say what page. But to Judge Merrill's point, why do we have courts ask defendants to waive the right to have an indictment read in open court before them? They have a Fifth Amendment due process right to the oral pronouncement of their sentencing. She's asking for the waiver. She's saying, do you understand those? Do you have any objection to them? They're waiving not just the reading. They're waiving any objection to those conditions. And then she goes further and explains the ones that you might want to highlight. What I would say is that on the cost benefit analysis, asking the defendant with greater specificity and asking the defendant to affirmatively waive with greater specificity on the record seems a de minimis cost for a significant benefit. Can I ask you whether it's possible that the issue of waiver as to a verbatim reading of the conditions might be a different analysis from the challenge to the failure to provide explanation for special conditions that the rationale for which isn't obvious from the record? In other words, is there a world in which we would say this process for not doing a condition by condition waiver was gold standard and it was an appropriate waiver, but there was never any time during the sentencing procedure when the court provided an adequate explanation for a condition that's not a standard condition and that's actually quite intrusive in terms of individual liberty and that even if somebody waives the individual rule by rule or condition by condition reading, it can be plain error for the court to fail to provide an explanation. Are those two? I think, I mean, I have a feeling I know what Judge Lynch might say in response. I appreciate. I think given the reality of a sentencing proceeding that the waiver of the oral pronouncement is a different analysis than the adequacy or the support for the imposition of certain non-mandatory conditions and that I don't know that I would agree that a defendant who waived the reading of the imposition of those conditions necessarily or implicitly waives as opposed to forfeits and this might, if it came up on review, be subject to a plain error standard, but waives a challenge to the reasonable relationship. I agree. If you asked only the question, do you waive the reading of these? And the answer is sure. I don't want to hear them. That does not waive a statement of reasons. If the waiver is, do you have any objection to the imposition of all of those conditions? And the answer is no, I do not. That is not a failure to object. That is not just, you know, they were in the pre-sentence report and nobody raised an issue about it, so you're stuck with it. That might be a forfeiture. But when you are asked, do you have an objection? And the answer is no. Indeed, the answer is with respect to even the most onerous, the special conditions, the answer is yeah. I mean, as a defense lawyer, I would typically object to this, but not in this case. But I think that the scenario, Judge Lynch, that you've proposed is not what we have here. The scenario would be the waiver of the reading of each of the non-mandatory conditions of release, the acknowledgement, you know, express acknowledgement of the understanding of each of those non-mandatory conditions, and then followed by an inquiry as to whether or not the defendant objects to any of those non-mandatory conditions. And that may be the gold standard if this court were to reach the merits of the case. That colloquy, it didn't play out like that in this case. So if there weren't any further questions from my colleagues, we will have an opportunity to hear from them again. So perhaps we can hear from Mr. Lee. Good afternoon, Your Honor. May it please the Court. My name is Alexander Lee. I represent the United States of America in this deal, as I did in the District Court. I'd like to just start with the issue of the waiver. And I think it's telling that in the last few minutes of conversation, we've been discussing what could Judge Fela have done better. And I think all of the suggestions that have come up are things that Judge Fela, in fact, did do. So, for example, there was a suggestion that perhaps Judge Fela could have made a more direct reference to what parts of the pre-sentence report contained the special and mandatory and the standard conditions of supervised release. Well, she did do that. And she reviewed and summarized those conditions in buckets, but then more specifically, the special conditions in particular to both the defense counsel and to the defendant personally. There was a suggestion that, well, perhaps Judge Fela could have asked the defendant himself, does he waive the public reading of these conditions? Well, she did do that. And, in fact, she asked the defendant personally, Mr. Bartley, since you've reviewed all of the conditions with your attorney and since we've spoken about some of them in this proceeding, will you agree that I can refer to these conditions in this proceeding collectively as the mandatory, standard and special conditions of supervised release without reading them word for word into the record? The defendant, yes, I will. So all of these things that the defense suggests Judge Fela could have done better, she actually did do. So let me shift, though, and I'm not here to second-guess the way Judge Fela handled things, but I do think it's an interesting question, what's our standard of review as to procedural and substantive challenge to particular conditions? So I want to put aside the waiver of the condition-by-condition reading, and I want to focus on the objection to a specific special condition that was imposed. Is it your position that the court comes out and says, has everybody read the PSR? Any objections to any of the proposals there? No, Your Honor. Is that a waiver? Do we then review any challenge to a failure to explain a special condition in that that was listed in the PSR to which there was no generalized objection? I realize that's not this case, but is that a waiver case or a forfeiture case? That's a waiver case, Your Honor. And the reason is because a waiver is simply an intentional relinquishment of a known right, and that's it. And in the case where the defendant and his counsel have reviewed all of the conditions that are set forth in the pre-sentence report, where they have thought about it and considered it, they know what it is that they are giving up. And so when defense counsel then at sentencing says, I have no objection to the entirety of the pre-sentence report, they are relinquishing intentionally the known right to make those substantive objections. Well, maybe not when they say they have no objection to the pre-sentence report, which could be ambiguous, but at least when they say they have no objection specifically to the standards, the conditions of supervised release that are listed in the pre-sentence report. Certainly, Your Honor. And as the Court points out, the colloquy with defense counsel is actually much more pointed in this specific case. And that's exactly the rule with respect to, for example, objections to jury instructions, that there's a difference between nobody objected and we both have a charge conference and go through line by line, page by page, what the instructions are going to be and ask, does the defense or the government have any objections to any of those things? And the answer is no. That's not just a forfeiture. That's not just I didn't object when it was given or something like that. That's a waiver. I agree with that. And if I may, I would point the Court to one other thing because I think it's revealing. We've been talking about the colloquy between the Court and the defense counsel regarding the five special conditions and then defense counsel said, I've thought about it, but I don't object. And I'm paraphrasing there. But there's actually a second sort of reference to that by defense counsel at the end of the sentencing proceeding, which I think is also very revealing. At the end of the proceeding, when the district court warned the defendant of the consequences of violating his conditions of special release, defense counsel said, you're making me reconsider our consent to the special conditions, but no, I'm fine. And I think what that tells the Court is that this was a considered decision. It was a considered decision to consent to the special conditions for all the reasons we've talked about, which is that in any other case, the defendant might well have been put in prison. And in the argument that was made in the sentencing submission that the defense put forth, the plea was, don't put me in prison. Instead, put me on home detention and then follow my progress. And that's exactly what the Court did. And these special conditions, including yes, the search condition, were designed to implement the defendant's own invitation to follow his progress. I suppose that's true in this case. I'm wondering, though, I think you've advocated a broader proposition, which is that if someone doesn't object to the conditions, if the question is, any objection to the proposed conditions in the PSR, no, that regardless of whether there were incentives and things like you described, we don't review procedurally or substantively those conditions. Your Honor, I think this may perhaps be the danger of pontificating on cases that are not fully briefed and don't have the facts fully in front of me. But I would say this, Your Honor, where there is an intentional relinquishment of a known right where the record makes clear that the defendant had a full opportunity to consider, to think about, and then had an opportunity to object and then affirmatively said, I do not object. I do think that under the law that is a waiver and not a forfeiture. I understand the general principle, but now we're drilling down into how we apply it, right? And so I'm gathered from that last answer that maybe you're stepping back a little bit from the proposition that a general question, any objection to the conditions proposed in the PSR, no, isn't per se a waiver. I think it would likely depend on the facts and the record before the court, including whether the preceding question had been asked, have you reviewed this entire document with your counsel? And if the foundation had been laid that every part of that PSR had been reviewed, that had been considered, that every part of this had been thought about, and then the question is, do you object? And the answer is no, then I do think that's an intentional relinquishment. There is a real world here that we're talking about. It is a world in which defendants have lawyers, almost always. Some are per se. That might create a special situation. They have lawyers who work with them to create a strategy for dealing with sentencing. They decide what matters and what doesn't. They decide where they're going to put their chips and what they're going to argue for. Very often there are implicit bargains about jail versus stringent conditions of supervised release. Sometimes those are explicit. Other times they're not. There are strategic decisions about what it is that you're going to argue and what it is you're not going to argue. Right? Absolutely, Your Honor. And so when a lawyer and his client say we've thought about this, we've considered it, we've read it, we don't have a problem with that. Our problem is over here. That's what we want to argue about at this sentencing. That's the world we're in. It's not a world in which then appellate lawyers get to come in and say, yeah, but you know, now after the fact, I would have objected. I think they should have objected. I have a problem with this particular condition of supervised release read in isolation from what that activity in the district court was really about. So I don't . . . from a proposition that intentionally saying I have no objection is something that I've read and understood. Your position is that constitutes a waiver. I agree with that, Your Honor. I do think that constitutes a waiver. And I think a waiver is exactly what happened in this case for all the reasons the court has suggested. That this was part of a deliberate, intentional strategy to avoid imprisonment really at the cost of any reasonable condition of supervised release, including the ones that were imposed here. I'll just make two additional very quick points. First, at best we're talking about plain error review. And the district court could not have committed plain error by failing to articulate reasons for the standard conditions when under this court's binding precedent, she was not required to even orally pronounce them, let alone give reasons for either the mandatory or the standard conditions. The second point I just very quickly make, Your Honor, is there is a question about mootness with respect to the employment condition. It is moot, but really for two reasons. Not just because the first 18 months have expired, but because when the jurisdiction over the supervised release was transferred to the District of Columbia District Court, the defendant then went to that court and said, I actually want to work. And in August of 2022, that's exactly what the district court permitted him to do. So even while he was on home confinement, he was permitted to work. And so there's really no live controversy over that condition of supervised release, whether he should be able to work or not work. He's already gotten that condition modified in the District of Columbia Court. Unless the court has any questions, I'll rest on our submission. Thank you very much. Judge Bennett. Your Honor, I don't know that I have much more to say on the waiver issue. I will just respond briefly to Mr. Lee's comment about the statement at A198 where Judge Vaila asked if she could refer to the conditions as mandatory, standard, and special. And he said yes. I do think that's meaningfully different than the proposal that a sentencing court engage meaningfully in a colloquy to ensure that the defendant understands what these conditions are, has an opportunity to have them read into court, read into the record, and is on notice as to each and every one. Although I understand the point that this is what defense counsel has intended to do, the reality also of these sentencing proceedings is that they are intimidating and they are, and Mr. Lee is correct that there is often an intentional and deliberate strategy to minimize the incarceratory consequences of the conviction. But I don't think that that dovetails necessarily with a tactical decision to concede on the supervised release conditions. To the extent the goal here was for Mr. Bartley to remain out of custody in light of his health conditions, in light of the public health crisis, it was not part of the strategy to concede on any supervised release conditions. In fact, it wasn't even addressed other than to assure the court that should Mr. Bartley commit a new crime or use drugs again, which were the only two things that the court really focused on during the sentencing hearing in terms of his history and characteristics, that the court had tools to monitor that behavior and address them accordingly. I would just say that again, I do think that the waiver and the merits are intertwined here. The Fourth Circuit said that one of the reasons that oral pronouncement is important is to allow a reviewing court to determine whether the non-mandatory conditions are reasonably related to the factors that permit imposition of a discretionary condition. Here I would just say that without a rule in the circuit requiring some more robust engagement on the conditions of supervised release, we end up in a situation where it's very hard to review the reasonable relationship between those non-mandatory conditions and weigh them against the imposition on the defendant's liberty interests. Thank you very much. Thank you. Thank you both. Very well argued, especially Ms. Bennett. I appreciate that I came down hard on you and you stood right in there and gave it back to me. That's what you should be doing and I appreciate it very much. Appreciate it all. We'll take this under advisement.